# LAND APPRAISAL REPORT

File No. 15004

**Exhibit 2**

## IDENTIFICATION

- Borrower: Luis Gonzalez
- Census Tract: —
- Map Reference: 1310
- Property Address: PR. 784 int. \\\\\Boncito Ward
- City: Caguas
- County: 25
- State: Puerto Rico
- Zip Code: 00725
- Legal Description: See Deed Code # 250-000-930-32-000
- Sale Price $ —
- Date of Sale: —
- Loan Term — yrs.
- Property Rights Appraised: [X] Fee [ ] Leasehold [ ] De Minimis PUD
- Actual Real Estate Taxes $ —
- (yr) Loan charges to be paid by seller $ —
- Other sales concessions: —
- Lender/Client: Luis Gonzalez
- Address: Caguas
- Occupant: Vacante
- Appraiser: Jorge A. Figueroa Papaleo
- Instructions to Appraiser: —
- Lic. #250

## NEIGHBORHOOD

| | Urban | Suburban | Rural |
|---|---|---|---|
| Location | | | X |
| Built Up | Over 75% | [X] 25% to 75% | Under 25% |
| Growth Rate | [ ] Fully Dev [ ] Rapid | [X] Steady | [ ] Slow |
| Property Values | [ ] Increasing | [X] Stable | [ ] Declining |
| Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply |
| Marketing Time | [ ] Under 3 Mos | [ ] 4-6 Mos | [X] Over 6 Mos |

Present Land Use 70 % 1 Family, — % 2-4 Family, — % Apts, — % Condo, — % Commercial, — % Industrial, 30 % Vacant, — %

Change in Present Land Use [X] Not Likely [ ] Likely (*) [ ] Taking Place (*)
(*) From — To —

Predominant Occupancy [X] Owner [ ] Tenant — % Vacant

Single Family Price Range $ 50,000 to $ 125,000 Predominant Value $ 100,000
Single Family Age 25 yrs to 40 yrs Predominant Age 30 yrs

| | Good | Avg | Fair | Poor |
|---|---|---|---|---|
| Employment Stability | | X | | |
| Convenience to Employment | | X | | |
| Convenience to Shopping | | X | | |
| Convenience to Schools | | X | | |
| Adequacy of Public Transportation | | X | | |
| Recreation al Facilities | | X | | |
| Adequacy of Utilities | | X | | |
| Property Compatibility | | X | | |
| Protection from Detrimental Conditions | | X | | |
| Police and Fire Protection | | X | | |
| General Appearance of Properties | | X | | |
| Appeal to Market | | X | | |

Comments including those factors, favorable or unfavorable, affecting marketability (e.g. public parks, schools, view, noise):
No unfavorable conditions were observed at day of inspection.

## SITE

- Dimensions: 2 Cdas
- Sq Ft or Acres: —
- [ ] Corner Lot
- Zoning classification: Out Of Zoning area
- Present improvements [ ] do [ ] do not conform to zoning regulations
- Highest and best use: [X] Present use [ ] Other (specify) —

| Public | Other (Describe) | OFF SITE IMPROVEMENTS | | |
|---|---|---|---|---|
| Elec [X] | | Street Access [X] Public [ ] Private | Topo | Rugged |
| Gas [ ] | | Surface Asphalt | Size | Average |
| Water [X] | | Maintenance [X] Public [ ] Private | Shape | Rectangular |
| San Sewer [ ] | | [ ] Storm Sewer [ ] Curb/Gutter | View | Normal |
| | | [ ] Sidewalk [X] Street Lights | Drainage | Adequate |

Underground Elect & Tel [ ]
Is the property located in a HUD identified Special Flood Hazard Area? [X] No [ ] Yes

Comments (favorable or unfavorable including any apparent adverse easements, encroachments or other adverse conditions):
There are no adverse influence which might have an impact on the marketability of the property.
Flood Map No. 72000C1205J-Zone X.

## MARKET DATA ANALYSIS

The undersigned has recited three recent sales of properties most similar and proximate to subject and has considered these in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of subject. If a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | Subject Property | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | PR. 784 Int Cañaboncito Ward | # 47 Las Piñas Ward 276-088-959-35-000 | | Rd.7704 Turabo Ward Caguas | | Rd.788 Tomas de Castro Wd. Caguas | |
| Proximity to Subj | | | | | | | |
| Sales Price | $ | $ 25,000 | | $ 70,000 | | $ 45,000 | |
| Price | Cdas | $25000 | | $19830 | | $31690 | |
| Data Source | | Public Record | | Public Record | | Public Record | |
| Date of Sale and Time Adjustment | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| | | 03/13 | | 5-13 | | 03-13 | |
| Location | Average | Average | | Average | | Average | |
| Site/View | 2.030 Cdas | 1 Cda. | | 3.53 Cdas. | +3966 | 1.42 Cdas. | |
| Size | | | | Inf | | | |
| Top | Rugged | Sup | -2500 | Similar | | Sup | -3160 |
| Acc | | | | | | | |
| Sales or Financing Concessions | | | | | | | |
| Net Adj (Total) | | [ ] Plus [X] Minus $ | 2,500 | [X] Plus [ ] Minus $ | 3,966 | [ ] Plus [X] Minus $ | 3,160 |
| Indicated Value of Subject | | $ | 22,500 | $ | 23,796 | $ | 30,530 |

Comments on Market Data: We are evaluating 2.030 Cdas.  2.030 Cdas x $28000 = $84,840.00
Wood Improvement 576 Sq.Ft. x $15.00 = $8,640.00

Comments and Conditions of Appraisal: —

## RECONCILIATION

Final Reconciliation:

The value obtained from the Sales Comparison Approach is the best indicator of value for subject property.

I ESTIMATE THE MARKET VALUE, AS DEFINED, OF SUBJECT PROPERTY AS OF March 11 2015 to be $ 93,400

Appraiser(s): *Jorge A. Figueroa Papaleo* / signature
Review Appraiser (if applicable): [ ] Did [ ] Did Not Physically inspect Property

03/11/2015



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:

PR. 784 int. Cañaboncito Ward
Caguas, Puerto Rico 00725

### FOR:

Luis Gonzalez
Caguas

### BY:

Jorge A. Figueroa Papaleo
Box 8905 Caguas, PR. 00726
39 G Pino Villa Turabo
Caguas, P.R. 745-2985

**Photograph Addendum**

Owner: Luis Gonzalez
Property Address: PR. 784 int. Cañaboncito Ward
City: Caguas
State: Puerto Rico
Client: Luis Gonzalez
Appraiser: Jorge A. Figueroa Papaleo
County: 25
Zip Code: 00725
Lender's Address: Caguas
Appraiser's Address: Box 8905 Caguas, PR. 00726



**Subject Front**



**Subject Rear**



**Subject Street**

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustments should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

### STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. The separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrance of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**

PR. 784 int. Cañaboncito Ward, Caguas, Puerto Rico 00725

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: Jorge A. Figueroa Papaleo | Name: |
| Date Signed: 03/11/15 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #: 250 | or State License #: |
| State: Puerto Rico | State: |
| Expiration Date of Certification or License: 05/02/16 | Expiration Date of Certification or License: |
| | ☐ Did ☐ Did Not Inspect Property |